## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **NATHANIEL LOWE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File No.** |
| **v.** | ) | |
| | ) | |
| **METANOYA PROPERTIES, INC.,** | ) | |
| **SOUTHEASTERN APARTMENT** | ) | |
| **INVESTMENT & CORPORATION,** | ) | |
| **Z BEST PROPERTIES, LLC,** | ) | |
| **LISA ZOHOURY and** | ) | |
| **ANDY ZOHOURY** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Nathaniel Lowe (hereinafter "Mr. Lowe"), by and through undersigned counsel, and hereby files this Complaint for Damages against Metanoya Properties, Inc. ("Metanoya"), Southeastern Apartment Investment & Corporation ("Southeastern"), Z Best Properties, LLC ("Z Best") Lisa Zohoury, and Andy Zohoury (hereinafter collectively referred to as the "Defendants") showing as follows:

## INTRODUCTION

### 1.

Plaintiff previously filed suit concerning some of the issues and some of the Parties named in this Complaint. ("Case 1"). On March 4, 2017, this Court dismissed Case 1 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Prior to this dismissal, and based on information produced/provided by Defendants during Case 1, Plaintiff was in the process of amending his Complaint in Case 1 to add the additional claims and parties included herein.

### 2.

Metanoya is a Georgia Corporation that provides property management services for residential apartments that are owned and/or managed by the other named Defendants, and possibly for other properties as well. On or about June 6, 2016, Metanoya hired Mr. Lowe to be a maintenance employee with a primary focus on HVAC. Lisa Zohoury and Andy Zohoury are the owners of Metanoya.

### 3.

Metanoya assigned Mr. Lowe to do maintenance work at two apartment complexes, Huntington Lane and Riverwood Club.

4.

Huntington Lane is an apartment complex that is owned by Southeastern. Lisa Zohoury is the CEO of Southeastern.

5.

Riverwood Club is an apartment complex that is currently owned by Riverwood Club Apts, Inc. At the time Mr. Lowe worked at Riverwood Club, the complex was owned by Z Best. Lisa Zohoury is the CEO of both entities.

6.

Metanoya, Southeastern, Z Best, Lisa Zohoury, and Andy Zohoury jointly employed Mr. Lowe. Therefore, Metanoya, Southeastern, Z Best, Lisa Zohoury, and Andy Zohoury are joint employers. Furthermore, it is believed, and therefore alleged that there is common ownership and/or control of Metanoya, Southeastern and Z Best with one or more of the Zohoury's owning and/or controlling all three of those entities.

7.

The instant action arises from Defendants' violation of Mr. Lowe's right to minimum wages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA").

8.

During Mr. Lowe's employment with Metanoya, Defendants violated the FLSA by failing to timely pay Mr. Lowe at the legally required minimum wage rate for all hours worked. As a result, Mr. Lowe is seeking unpaid minimum wages, unpaid regular wages, liquidated damages, attorneys' fees, costs, and other appropriate relief pursuant to 29 U.S.C. § 216(b) and applicable law.

## JURISDICTION AND VENUE

9.

This Court has subject matter jurisdiction over the instant action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1367.

10.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 (b) and (c) because the acts giving rise to this Complaint occurred within this District, and because Defendants are subject to this Court's personal jurisdiction.

## PARTIES

11.

Ms. Lowe resides in Fulton County, Georgia and is a citizen of the United States.

12.

At all times material hereto, Mr. Lowe was a non-exempt "employee" of Defendants for purposes of the FLSA.

13.

At all times material hereto, Mr. Lowe handled, sold, and/or worked with goods or materials that have been moved in or produced for interstate commerce, and he was thus engaged in interstate commerce during his employment with the Defendants.

14.

Defendant Metanoya is a Georgia corporation with its principal office located at 880 Marietta Hwy, Suite 630 BOX 207, Roswell, GA, 30075. Metanoya regularly does business in the State of Georgia and may be served through its registered agent, J Lansing Kimmey, at 229 Peachtree Street, Suite 240 Atlanta, GA 30303. At all times material hereto, Metanoya was an "employer" of Mr. Lowe for purposes of the FLSA, and Metanoya is jointly and severally liable for the failure to pay Mr. Lowe as required

15.

Defendant Southeastern is a Georgia corporation with its principal office located at 880 Marietta Hwy, Suite 630 BOX 207, Roswell, GA, 30075.

Southeastern regularly does business in the State of Georgia and may be served through its registered agent, J Lansing Kimmey, at 229 Peachtree Street, Suite 240 Atlanta, GA 30303.  At all times material hereto, Southeastern was an "employer" of Mr. Lowe for purposes of the FLSA, and Southeastern is jointly and severally liable for the failure to pay Mr. Lowe as required

16.

Defendant Z Best a Georgia corporation with its principal office located at 880 Marietta Hwy, Suite 630 BOX 207, Roswell, GA, 30075.  Z Best regularly does business in the State of Georgia and may be served through its registered agent, J Lansing Kimmey, at 229 Peachtree Street, Suite 240 Atlanta, GA 30303. At all times material hereto, Z Best was an "employer" of Mr. Lowe for purposes of the FLSA, and Z Best is jointly and severally liable for the failure to pay Mr. Lowe as required

17.

Defendant Lisa Zohoury ("Ms. Zohoury") is a Georgia resident.  On information and belief, Ms. Zohoury is the CFO, CEO, and a co-owner of Metanoya, Southeastern, and Z Best.  At all times material hereto, Ms. Zohoury exercised control over significant aspects of the operations of Metanoya, Southeastern, and Z Best, including employee compensation, and Ms. Zohoury

personally played a substantial role in causing the FLSA violations set forth in this Complaint. As a result, Ms. Zohoury was an "employer" of Mr. Lowe for purposes of the FLSA, and Ms. Zohoury is jointly and severally liable for the failure to pay Mr. Lowe as required.

18.

Defendant Andy Zohoury ("Mr. Zohoury") is a Georgia resident. On information and belief, Mr. Zohoury is a co-owner of Metanoya. At all times material hereto, Mr. Zohoury exercised control over significant aspects of the operations of Metanoya, including employee compensation, and Mr. Zohoury personally played a substantial role in causing the FLSA violations set forth in this Complaint. As a result, Mr. Zohoury was an "employer" of Mr. Lowe for purposes of the FLSA, and Mr. Zohoury is jointly and severally liable for the failure to pay Ms. Lowe as required.

19.

At all times material to this action, Metanoya, Southeastern, Z Best, Ms. Zohoury, and Mr. Zohoury were Mr. Lowe's "joint employer" for purposes of the FLSA due to an arrangement between the individual Defendants to share the services of Mr. Lowe, and/or because one of the individual Defendants acted directly or indirectly in the interest of the other Defendants in relation to Mr.

Lowe, and/or because the individual Defendants shared control of Mr. Lowe's employment, and/or because one Defendant controls the other Defendant, and/or because the Defendants are under common control. In fact, Defendants, themselves, have referred to Mr. Lowe's employer as both Metanoya and Huntington Lane, using those names interchangeably.

20.

At all times material hereto, the Defendants had two or more employees who handled, sold, or otherwise worked on goods or materials that had been moved in or produced for interstate commerce. Thus, the Defendants were an enterprise engaged in interstate commerce or in the production of goods for interstate commerce for purposes of the FLSA.

21.

At all times material hereto and upon information and belief, Defendants have produced at least $500,000 in annual gross volume of sales made or business done.

## FACTUAL ALLEGATIONS

22.

On or about June 6, 2016, Metanoya hired Mr. Lowe to work as a maintenance employee with an emphasis on heating ventilation and air conditioning (HVAC). On

or about July 19, 2016, Metanoya fired Mr. Lowe.

23.

Metanoya was Mr. Lowe's employer. Metanoya hired Mr. Lowe, directed Mr. Lowe's work, and ultimately terminated Mr. Lowe's employment.

24.

Upon information and belief, Metanoya provides property management services for approximately five (5) different apartment complexes, including Huntington Lane and Riverwood Club apartment complexes.

25.

Huntington Lane is located at 152 Dodd Street Southeast Marietta, Georgia 30060. Huntington Lane is an apartment complex with several buildings and a total of 75 to 100 individual apartment units.

26.

Riverwood Club is located at 901 Bolton Road Northwest Atlanta, Georgia 30331. Riverwood Club is an apartment complex with several buildings and a total of 75 to 100 apartment units.

27.

Upon information and belief, Metanoya has at least $500,000 of annual gross volume of sales made or business done.

28.

Metanoya has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

29.

Among other employees, Metanoya employed Maria Diaz, the property manager of Huntington Lane and Carlos Amaya, a maintenance manager. Both Ms. Diaz and Mr. Amaya handled goods or materials that have been moved in or produced for interstate commerce.

30.

Mr. Amaya and Ms. Diaz frequently used corporate credit cards to purchase tools and supplies for the apartment complexes. Mr. Amaya also frequently picked up supplies at Home Depot.

31.

Mr. Lowe was assigned to work at two or more of the apartment complexes managed by Metanoya, including Huntington Lane and Riverwood Club.

32.

Mr. Lowe's position as a maintenance employee required him to regularly handle and work with goods and materials that have been moved in or produced for interstate commerce.

33.

As a maintenance employee, Metanoya assigned Mr. Lowe maintenance orders to fix various units at the apartment complexes. Much of Mr. Lowe's work required Mr. Lowe to repair HVAC units and systems.

34.

Metanoya assigned Mr. Lowe HVAC maintenance orders which required Mr. Lowe to engage with goods and materials used in interstate commerce. Most days, Mr. Lowe used Freon, a federally regulated chemical, to work on HVAC units. Mr. Lowe also replaced HVAC capacitors and contactors.

35.

Every day, Metanoya required Mr. Lowe to tend to maintenance orders beyond HVAC repairs. Mr. Lowe handled and worked with filters, light fixtures, sockets, light bulbs, wires, and wire caps. Mr. Lowe was also asked to frequently change faucets and replace toilet parts.

36.

Metanoya provided Mr. Lowe with a book to order parts, if a part was not already in stock. Most, if not all of the materials, supplies and parts used by Mr. Lowe to do his work for Defendants were moved and/or produced in interstate commerce.

37.

Mr. Lowe frequently used his phone to communicate with his co-workers on the job. For example, if Mr. Lowe needed help or to ask a question about a repair, Mr. Lowe would text Mr. Amaya, Metanoya's maintenance manager. Additionally, Ms. Diaz frequently called Mr. Lowe requesting his assistance.

38.

In order to fulfill the maintenance orders Metanoya assigned to him, Mr. Lowe drove back and forth between Huntington Lane and Riverwood Club. Mr. Lowe drove on Interstate 75 and Interstate 20, travelling back and forth.

39.

Metanoya issued Mr. Lowe a fuel reimbursement for travelling to and from different apartment complexes

40.

Mr. Lowe used the internet every day to clock in and out.

41.

Mr. Lowe was engaged in interstate commerce, thus, in addition to working for an enterprise regularly engaged in interstate commerce, Mr. Lowe was engaged in interstate commerce and was, therefore, individually covered under the FLSA.

42.

Defendants agreed to pay Mr. Lowe at the rate of $13.00 per hour for each hour worked.

43.

Defendants refused to pay Mr. Lowe for work he performed between July 4, 2016 and July 19, 2016, leaving a total of 93.2 hours uncompensated. Thus, on July 19, 2016, when Metanoya terminated Mr. Lowe's employment, Defendants owed Mr. Lowe $1,211.60 in unpaid wages. Of that amount $675.70 was minimum wages, and $535.90 was contract damages. Because Defendants failed to pay the minimum wage portion, when due, they also became liable for liquidated damages in the amount of $675.70, attorneys' fees, and costs. Months after terminating Mr. Lowe, on February 9, 2017, Defendants delivered to him two checks dated February 1, 2017. The first check for unpaid wages was in the amount of $798.40 (Gross $910.00). The second check for unpaid wages was in the amount of $102.41 (Gross $111.14). Thus, of the amount claimed, Defendants have already admitted they owed $1,021.14, and that they did not pay Mr. Lowe until after months of expensive litigation. As FLSA claims cannot be settled without approval, the February 9, payment was not effective to release any claims for amounts still owed.

44.

When Metanoya terminated Mr. Lowe's employment on July 19, 2016, and ordered him to leave the premises without his final pay, there was no issue about a missing Freon tank or a gauge. Defendants' refusal to pay Mr. Lowe occurred before he left the premises of Metanoya and before there was any issue about a missing tank or gauge.

45.

On or about July 19, 2016, Ms. Diaz terminated Mr. Lowe and ordered him immediately leave the property. Mr. Lowe got into his pickup truck and immediately left the property as ordered. It was only when Mr. Lowe arrived home that he realized that Carlos Amaya's empty Freon tank and Carlos Amaya's gauge were in the bed of his pickup truck, not the cab.

46.

On or about August 19, 2016, Andy Zohoury allegedly prepared a separation letter which stated "[D]ue to the act of misrepresenting your abilities with regard to your level of knowledge of HVAC systems, as well as the negligence and subsequent mishandling of HVAC equipment, the company has suffered the severe financial loss as the result of your employment." "Therefore, the Company is forced to withhold any wages that may be due to you in order to compensate our

financial hardship." (See Attached, Exhibit 1). The document dated a full month following the termination of Mr. Lowe's employment admits that neither the Freon tank nor the gauge had anything to do with the decision to withhold Mr. Lowe's pay.

47.

Along with the letter, Mr. Lowe received a separation notice which stated "Mr. Nathaniel 'Nate' Lowe was terminated from employment at Huntington Lane Apartments on 07-19- 2016 due to a misrepresentation of his abilities relating to the level of competency on working with residential Heating Ventilation and Air Conditioning (HVAC) systems. Following Nate's dismissal it was discovered items that were previously in Nate's possession while working on the Properties had gone missing. HVAC equipment that was borrowed from Carlos to complete work orders could not be located after Nate's dismissal." (See Attached, Exhibit 2). The same Separation Notice identified the employer as Metanoya Properties, Inc.

48.

Metanoya's decision to terminate Mr. Lowe had nothing to do with the Freon tank or the gauge, and according to the Separation Notice Andy Zohoury

signed and submitted to the Georgia Department of Labor, as well as the August 19, letter, the HVAC equipment belonged to Carlos Amaya.

49.

In an attempt to defend their illegal wage theft, Defendants refer to an "agreement" that Mr. Lowe signed which allowed them to withhold Mr. Lowe's pay. The "agreement" which Defendants refer to is not an agreement or a contract at all. It is titled "Employee Guidelines and Information." (hereinafter "Guidelines") The word "agreement" is found nowhere in the Guidelines. The relevant section of the Guidelines states "Any monies owed to the Company for any reason (advances, tools, rent, etc.) will be deducted in full from the final paycheck." (See Attached, Exhibit 3).

50.

Before hiring counsel or initiating the instant suit, Mr. Lowe attempted to resolve his claims outside of litigation; however, Defendants refused to pay Mr. Lowe the unpaid wages owed to him.

51.

As a result of Defendants' refusal to pay Mr. Lowe, Mr. Lowe hired the undersigned counsel.

52.

On August 29, 2016, Plaintiff's Counsel sent Defendants a demand letter with the desire to avoid litigation. Defendants still refused to pay Mr. Lowe the unpaid wages owed to him.

53.

Defendants, thus, forced Mr. Lowe to file his original Complaint on September 14, 2016.

54.

Rather than pay Mr. Lowe Defendants pursued frivolous criminal charges against Mr. Lowe in Cobb County for property that they did not own and for property that Mr. Lowe did not steal.

55.

On September 26, 2016, on Metanoya's application, the Magistrate Court of Cobb County issued a warrant against Mr. Lowe for "Theft by Taking" for an "Air Conditioner Freon System valued at $800.00" and an "Air Conditioner gauge valued at $300.00".

56.

A sheriff came to Mr. Lowe's home when he was away.  Upon learning of the visit from the sheriff, Mr. Lowe, who was terrified and embarrassed, turned himself in to the police.  Mr. Lowe spent a night in jail before he was finally released.

57.

On March 17, 2017, the Assistant Solicitor General dismissed the Theft by Taking charging against Mr. Lowe, citing "insufficient evidence to provide guilt beyond a reasonable doubt".  (See Attached, Exhibit 4).

58.

By unjustifiably refusing to compensate Mr. Lowe for hours worked, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Mr. Lowe unnecessary trouble and expense.

59.

Defendants have not made a good faith effort to comply with the FLSA with respect to Mr. Lowe.

**COUNT ONE: FLSA VIOLATION (MINIMUM WAGE)**

60.

Mr. Lowe re-alleges and incorporates Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

18

61.

At all times relevant hereto, Mr. Lowe was a non-exempt employee for purposes of the FLSA.  Thus, Defendants were obligated to pay Mr. Lowe at a rate not less than the minimum hourly wage of $7.25 per hour.

62.

By failing to properly pay Mr. Lowe in accordance with § 206 of the FLSA, despite knowledge of Mr. Lowe's status as a non-exempt employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

63.

As a result of Defendants' willful violation of the FLSA's minimum wage provisions, Mr. Lowe is entitled to damages, including, without limitation, unpaid wages sufficient to compensate Mr. Lowe at the minimum wage rate for all hours worked, liquidated damages, attorneys' fees, and costs.

## COUNT TWO: BREACH OF CONTRACT

64.

Mr. Lowe re-alleges and incorporates Paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

65.

Defendants agreed to pay Mr. Lowe $13.00 for each hour worked. Defendants refused to pay Mr. Lowe for 93.2 hours that he worked for them. On or about February 9, 2017, Defendants paid to Mr. Lowe the gross sum of $1,021.14. Pursuant to their agreement to pay Mr. Lowe $13.00 per hour, Defendants continue to owe to Mr. Lowe $190.46.

66.

By failing to pay Mr. Lowe for each hour worked, Defendants breached their agreement with Mr. Lowe.

67.

As a result of Defendants' breach of contract, Mr. Lowe is entitled to damages, including pre-judgment interest, in an amount to be determined at trial.

**COUNT THREE: VIOLATION OF FLSA (INTERFERENCE)**

68.

Mr. Lowe re-alleges and incorporates Paragraphs 1 through 67 of this Complaint, as if fully set forth herein.

69.

Mr. Lowe engaged in protected activity when he requested the payment of the unpaid minimum wage owed to him by Defendants and filed a lawsuit against Defendants to recover those wages.

70.

As set forth above, following Mr. Lowe's initial Complaint, Mr. Lowe learned that Defendants pressed criminal charges against him for a "theft by taking," as an attempt to interfere with his effort to enforce his federally protected right to be paid at least minimum wage for all hours he worked, to be free from interference with those federally protected rights and to be free from retaliation for his effort to enforce his rights..

71.

Defendants intended to interfere with Mr. Lowe's federally protected rights by falsely accusing Mr. Lowe of theft in an effort to dissuade him from collecting money owed to him and from otherwise enforcing his rights.

72.

But for concern that Mr. Lowe would pursue an FLSA claim for unpaid wages and other relief, Defendants would not have filed and pursued criminal charges against Mr. Lowe regarding property that did not even belong to them.

73.

A reasonable employee would find Defendants' actions materially adverse, and Defendants' interference would dissuade a reasonable worker from making or pursuing claims of violations under the FLSA.

74.

As a result of Defendants' interference, Mr. Lowe is entitled to all legal and equitable relief available pursuant to the FLSA.

## COUNT FOUR:  VIOLATION OF FLSA (RETALIATION)

75.

Mr. Lowe re-alleges and incorporates Paragraphs 1 through 74 of this Complaint, as if fully set forth herein.

76.

Mr. Lowe engaged in protected activity when he requested payment of the unpaid minimum wages owed to him by Defendants and when he filed a lawsuit against Defendants to recover those wages.

77.

As set forth above, following Mr. Lowe's initial Complaint, Mr. Lowe learned that Defendants pressed and pursued nonsensical criminal charges against him for "theft by taking" as an attempt to retaliate against Mr. Lowe seeking to be paid the minimum wages Defendants owed to him.

78.

Defendants acted with retaliatory motive in falsely accusing Ms. Lowe of criminal activity.

79.

But for Mr. Lowe's effort to collect the minimum wages Defendants owed tio him, Defendants would not have filed and pursued any criminal charges against Mr. Lowe concerning property that did not even belong to them.

80.

As a result of Defendants' retaliation, Mr. Lowe is entitled to all legal and equitable relief available pursuant to the FLSA.

## COUNT FIVE: MALICIOUS PROSECUTION

81.

Plaintiff re-alleges and incorporates Paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82.

As set forth above, Defendants intentionally and maliciously pursued a false criminal action against Mr. Lowe for property he did not steal and that they did not own.

83.

As set forth above, the criminal charge was dismissed in favor of Mr. Lowe.

84.

As a direct and proximate result of Defendants' actions, Mr. Lowe has suffered damages in amounts to be proved at trial. Thus, Mr. Lowe is entitled to actual and punitive damages, in amounts to be determined at trial.

## COUNT SIX: FALSE IMPRISONMENT

85.

Plaintiff re-alleges and incorporates Paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.

As set forth above, Defendants falsely, maliciously and intentionally caused Mr. Lowe to be arrested and incarcerated based on false criminal charges.

87.

As a direct and proximate result of Defendants' actions, Mr. Lowe has suffered damages in amounts to be proved at trial. Thus, Mr. Lowe is entitled to actual and punitive damages, in amounts to be determined at trial.

## COUNT SEVEN: THEFT BY TAKING

88.

Plaintiff re-alleges and incorporates Paragraphs 1 through 87 of the Complaint as if fully set forth herein.

89.

Defendants failed to pay Mr. Lowe his rightfully owed wages after they terminated him.

90.

Defendants unlawfully took Mr. Lowe's wages with the intent of depriving him of his property.

91.

As a result of Defendants' violations, Mr. Lowe is entitled to actual and punitive damages, in amounts to be determined at trial.

## COUNT EIGHT: CONVERSION

92.

Plaintiff re-alleges and incorporates Paragraphs 1 through 91. of the Complaint as if fully set forth herein.

93.

Defendants treated Mr. Lowe's wages as their own, holding onto Mr. Lowe's wages and not paying him when his paycheck was due.

94.

Defendants purposely gave Mr. Lowe the impression that Defendants were entitled to withhold his pay.

95.

As a result of Defendants' violations, Mr. Lowe has suffered damages in amounts to be determined at trial. Thus, Mr. Lowe is entitled to actual and punitive damages, in amounts to be determined at trial.

## COUNT NINE: ALTER EGO

96.

Plaintiff re-alleges and incorporates Paragraphs 1 through 95. of the Complaint as if fully set forth herein.

97.

Defendants have a unity of interest and ownership such that the separate personalities of the corporations and the individuals no longer exist.

98.

Thus, Plaintiff requests and is entitled to an order determining that for purposes of determing that one or more of the Defendants are enterprises covered by the FLSA and for liability purposes, Defendants must be treated as one and the same.

## COUNT TEN: VEIL PIERCING

### 99.

Plaintiff re-alleges and incorporates Paragraphs 1 through 98. of the Complaint as if fully set forth herein.

### 100.

Mr. Zohoury and Ms. Zohoury exercised complete control and domination of the finances, policy and business practices of the corporate defendants to such an extent that the corporate defendants had no separate mind, will or existence of their own.

### 101.

Corporate formalities were not observed by the corporate defendants. Moreover, the Zohoury's used the corporate defendans to avoid liability, to avoid and circumvent FLSA compliance and for other unlawful purposes.

### 102.

The aforesaid control was exercised by the Zohoury's to violate the FLSA.

### 103.

Thus, Plaintiff requests and is entitled to an order determining that the Zohoury's are jointly and severally liable for the debts and liabilities of the corporate defendants.

## COUNT ELEVEN: CONSPIRACY

### 104.

Plaintiff re-alleges and incorporates Paragraphs 1 through 103. of the Complaint as if fully set forth herein.

### 105.

As described herein, Defendants conspired to commit the violations described above. Because the Defendants are co-conspirators, they should be determined to be jont employers and further that they are all jointly and severally liable for all damages and sums determined to be owed to Mr. Lowe.

## COUNT TWELVE: ATTORNEYS' FEES AND EXPENSES

### 106.

Mr. Lowe re-alleges and incorporates Paragraphs 1 through 105. of this Complaint, as if fully set forth herein.

### 107.

As set forth above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Mr. Lowe unnecessary trouble and expense.

108.

As a result of Defendants' conduct as set forth herein, and pursuant to O.C.G.A. § 13-6-11, Defendants should be required to reimburse Mr. Lowe for the attorneys' fees and costs incurred to prosecute this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Lowe prays:

(a) That Defendants be served with process and required to answer this suit;

(b) For a trial by a jury;

(c) For judgment in favor of Mr. Lowe and against Defendants for all damages and relief allowed by law, including but not limited to actual damages, liquidated, damages, nominal damages, and punitive damages;

(d) For an award of back pay, front pay, lost benefits, and other damages for lost compensation and job benefits;

(e) For an Order determining that one or more of the Defendants are alter egos for each other;

(f) For an Order determining that the corporate veils should be pierced and that the Zohoury's are jointly and severally liable for all damages and sums determined to be owed to Mr. Lowe;

(g)     For an Order determining that one or more of the Defendants were engaged in a conspiracy to engage in the conduct and claims alleged herein;

(h)     For an Order determining that one or more of the Defendants are joint employers and that the employer(s) who employed Mr. Lowe were an enterprise engaged in interstate commerce and subject to the FLSA;

(i)      For an award of litigation expenses and costs, including attorneys' fees; and

(j)      For such other and further relief as this Court deems just and proper

[DATE AND SIGNATURES FOLLOW]

Respectfully submitted this 24th day of April, 2017.

COHAN LAW GROUP, LLC

*/s/ Louis R. Cohan*

LOUIS R. COHAN
Georgia Bar No. 173357
ARIEL D. FENSTER
Georgia Bar No. 420858
*Attorneys for Plaintiff*

3340 Peachtree Road NE, Suite 2570
Atlanta, Georgia 30326
(404) 891-1770 (telephone)
(404) 891-5094 (facsimile)
lcohan@cohanlawgroup.com
afenster@cohanlawgroup.com

I further certify that the foregoing has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

COHAN LAW GROUP, LLC
/s/ Ariel D. Fenster
ARIEL D. FENSTER
Georgia Bar No. 420858